IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DWAUN H. HARRINGTON, #03930-007   :

    Petitioner   :

    v.   :   CIVIL ACTION NO. RDB-07-1131

LISA HOLLINGSWORTH, Warden   :
    and
UNITED STATES PAROLE   :
COMMISSION
       :

    Respondents   :

## MEMORANDUM OPINION

Dwaun H. Harrington petitions *pro se* for a writ of habeas corpus pursuant to 28 U.S.C. §2241 challenging the United States Parole Commission's ("Commission") decision to revoke his parole and impose a term of thirty-two months imprisonment with twenty-eight months of supervised release. Upon careful consideration of the pleadings, exhibits and applicable law, the Court will deny the Petition.

### Background

On June 9, 2004, Harrington was convicted of cocaine distribution in the Superior Court of the District of Columbia, and sentenced to ten months incarceration and five years supervised release. On October 3, 2005, while on supervised release, Harrington was arrested carrying seven small bags of crack, a razor, $1,305.28 cash, and thirty-four empty ziplock bags.

On October 7, 2005, Harrington's supervision officer requested a detainer warrant for violating the conditions of his supervised release. Included in the request was the statement that Harrington was unemployed and had been so since his release. On November 9, 2005, the detainer issued, charging Harrington with "possession with intent to distribute crack cocaine." On January

24, 2006, the Superior Court of the District of Columbia found Harrington guilty of possession of cocaine and possession of drug paraphernalia. Pet. Ex. D.

Mona Aisner, an attorney in the District of Columbia Public Defender's Office, represented Harrington at the revocation hearing. According to Harrington, he informed Aisner that the supervision officer's report was incorrect because he had been employed during supervised release. Harrington states that Aisner promised to investigate his employment.

The revocation hearing was conducted on February 2, 2006. During the hearing, Harrington testified that he was a drug user, but not a drug dealer. He said that the money on his person at arrest was earned by detailing cars. Harrington testified that he had "found" the 34 ziplock bags. Hearing Summary, Resp. Ex. F. The hearing examiner also considered testimony presented by the arresting officer, David Randolph, and the police report. *See id.*

The Commission found by a preponderance of the evidence that Harrington had violated the conditions of his supervised release. "The significant amount of drugs, cash, and drug paraphernalia on his person, substantiates that he was engaged in the sale of crack cocaine." *Id.* The Commission determined Harrington's testimony not credible, also noting that the "pay stubs that the subject submitted as corroboratory evidence were for less than the amount of money that he had on his person." *Id.* In regard to the police officer's testimony, the Commission concluded:

> The police officer setting forth the conditions under which the subject was found with drugs, the large amount of money he had on hand, and the drug paraphernalia supporting the sale of drugs (a razor blade, used to cut crack cocaine rocks into units for sale) was persuasive that the subject was in fact dealing and not using, cocaine. It was also noted that the subject had no implements (i.e. a crack pipe) to smoke cocaine when he was found to be in possession of the crack cocaine.

*Id.*

On March 9, 2006, the Commission found Harrington had violated his supervised release for possessing crack cocaine with the intent to distribute and imposed a thirty-two month term of

imprisonment based on a Category Three Severity Rating and a Salient Factor Score of one. Petitioner was notified of his right to appeal to the National Appeals Board.

Harrington claims that he discussed an appeal with Aisner. According to Harrington, Aisner promised to file for an extension to appeal, but failed to do so. Petition, p. 18.[1] Harrington was therefore "forced to file a *pro se* appeal to NAB [National Appeals Board], prepared hastily and without benefit [of] practical insight or experience just two (2) days before the deadline, in order to preserve his right to administrative review." *Id.* Aisner disputed these assertions in her letter to Harrington dated August 8, 2006, in which she wrote:

> I regret that you did not permit me to file your appeal and instead, filed your own without telling me. I told you that I would appeal your case and that I was awaiting receipt of the hearing tape. I had no idea that you had filed your own appeal, until I received the NOA from the National Appeals Board stating that your appeal had been affirmed.

Pet. Ex. L.[2]

On June 9, 2006, the National Appeals Board denied Harrington's appeal, stating:

> The Commission made an independent finding based upon a preponderance of the evidence that you possessed with intent to distribute crack cocaine. The presence of implements used to prepare crack for sale, a large amount of cash at the scene of the arrest, and the fact that you did not possess any implements to smoke the crack yourself, were all factors that led to the Commission's determination that you possessed the drugs with the intent to distribute. There is no evidence to support your claim that the Commission based its findings on your history of convictions for drug distribution.

Resp. Ex. I. Harrington filed the instant petition for habeas corpus relief on May 1, 2007.

---

[1] The appeal was due within thirty days of the decision. *See* 28 C.F.R. §2.220; *see also* Resp. Ex. A.

[2] On March 12, 2006, Aisner requested a copy of the hearing audiotape under the Freedom of Information Act. Resp. Ex. H.

**Standard of Review**

A federal court reviews decisions of the United States Parole Commission for abuse of discretion. *See Simmons v. Shearin*, 295 F. Supp. 2d 599, 602 (D. Md. 2003). The appropriate standard of review of the Commission's decision's findings of fact "is not whether [the decision] is supported by a preponderance of the evidence, or even by substantial evidence; the inquiry is only whether there is a rational basis in the record for the conclusions embodied in its statement of reasons." *Funari v. Warden, Allenwood Federal Correctional Institution*, 218 F. 3d 250, 254 (3rd Cir. 2000). Against the context of this limited standard of review, the court will review each claim.

**Analysis**

Harrington challenges the revocation of his parole based on the following claims: 1) the revocation hearing was based on erroneous evidence about his employment status; 2) there was no rational basis for the Commission's interpretation of the evidence; 3) the Commission lacked evidence to find cocaine distribution; 4) the Commission impermissibly relied on Harrington's criminal history; 5) the Commission violated its regulations; and 6) ineffective assistance of counsel.

**1. Claim of Error in Employment Status**

Harrington claims the supervising officer incorrectly stated his employment status during supervised release and this error "so infected the entire revocation proceeding as to render it fundamentally unfair." Petition, p. 6. Harrington argues that this error violated due process by precluding the inference that the $1,305.28 he possessed at arrest was legally obtained. Harrington reasons that absent the alleged error there was a "reasonable probability" that the Commission would have charged him with simple possession rather than possession with intent to distribute and the

4

sentence imposed upon revocation would have been shorter.

Revocation hearings are not criminal prosecutions, and therefore, a defendant is not entitled to the "full panoply of rights due a defendant" in a criminal proceeding. *See Morrissey v. Brewer*, 408 U.S. 471, 480 (1972).[3] The parole revocation process "should be flexible enough to consider evidence including letters, affidavits, and other materials that would not be admissible in an adversary criminal trial." *Id.* at 489; *see also United States v. Copley*, 978 F.2d 829, 831 (4th Cir. 1992) (extending *Morrissey* to revocation of supervised release). A revocation decision violates due process only if it is "totally lacking in evidentiary support or . . . so irrational as to be fundamentally unfair." *Duckett v. Quick*, 282 F.3d 844, 847 (D.C. Cir. 2002).

There is no factual basis to claim that the error alleged here "infected the entire revocation proceeding." First, there was ample evidence and testimony introduced at the hearing to support the charges against Harrington. The evidence showed seven bags of crack rocks, drug paraphernalia used for drug sales, and an absence of personal smoking implements (*i.e.*, a crack pipe). Further, as the finder of fact, the Commission determined Harrington's testimony not credible. Also, Harrington's pay stubs did not corroborate his testimony. Given these circumstances, the Commission's decision was reasonably based on the evidence presented. Harrington was accorded the constitutional due process to which he is entitled under *Morrisey*. Consequently, there is no merit to this claim.[4]

---

[3] "[P]arole and supervised release are 'analogous contexts,'" and the rules for one usually apply to the other. *See United States v. Armstrong*, 187 F.3d 392, 393-94 (4th Cir. 1999).

[4] Harrington also argues the Commission's charge of possession with intent to distribute was excessive since he was charged with misdemeanor possession in the Superior Court of the District of Columbia. The Court notes that the difference between the charges is attributable to

### 2. Claim there was no Rational Basis for Revocation

Harrington claims the evidence presented was insufficient for revocation. For the reasons discussed above, the Commission's decision had a rational basis in the record and the reasons for revocation were adequately expressed . The Commission did not abuse its discretion and this claim is without merit.

### 3. Claim the Evidence was Insufficient for Cocaine Distribution

The next claim is that the Commission improperly found Harrington had distributed crack rather than possessed crack with intent to distribute. Petition, p. 11. Harrington equates the Commission's statement that the "supervised release violation behavior . . . involved distribution of a small amount of crack cocaine" to the determination that it rendered a separate finding of actual distribution. As a factual matter, the Commission determined a violation for "Possession With Intent to Distribute Crack Cocaine." Resp. Ex. A.  Additionally, the National Appeals Board decision was clear that Harrington was found to have "committed the offense of possession with intent to distribute crack cocaine."  Resp. Ex. I.

If there is an error, it is harmless because actual distribution and possession with intent to distribute are considered the same for determining a severity rating under the Commission revocation guidelines.  *See*  28 C.F.R. §2.20 Chap. 9.  Accordingly, this claim provides no basis for the award of habeas corpus relief.

### 4. Claim the Decision was Impermissibly Based on Criminal History

---

the difference in the burden of proof  required for criminal conviction as compared to a violation of supervised release.  In order to criminally convict Harrington, the Superior Court of the District of Columbia had to find him guilty beyond a reasonable doubt.  The Parole Commission on the other hand needed only to prove a violation of supervised release by a preponderance of the evidence. *See* 28 C.F.R. §2.218(a); *see also Page v. Pearson*, 261 F. Supp. 2d 528, 531(E.D. Va. 2003).

The next claim is that the Commission improperly based revocation on Harrington's prior criminal record.[5] The National Appeals Board rejected this claim stating " There is no evidence to support your claim that the Commission based its finding on your history of convictions for drug distribution." Resp. Ex. I. Neither the Commission nor National Appeals Board based the decision to revoke supervised release predicated on Harrington's prior criminal history. This claim is factually without merit, and will be denied.[6]

### 5. Claim the Commission Violated its Regulations

Harrington challenges his revocation based on 28 C.F.R. §2.19(c), which provides in part that if a prisoner disputes the accuracy of information presented, "the Commission shall resolve such dispute by the preponderance of the evidence standard; that is, the Commission shall rely upon such information only to the extent that it represents the explanation of the facts that best accords with reason and probability."[7] In light of evidence and testimony presented at the revocation hearing, and for reasons already fully addressed herein, this claim lacks factual and legal merit.

### 6. Ineffective Assistance of Counsel Claim

The final claim presented is that Mona Aisner provided constitutionally ineffective assistance of counsel by failing to investigate Harrington's employment or file his appeal before the National Appeals Board. This claim is unavailing.

---

[5] Harrington acknowledged at the hearing that he had two prior convictions for Distribution or Possession with Intent to Distribute Cocaine. Resp. Ex. F.

[6] Prior convictions are considered in determining a salient factor score. Resp. Ex. A.

[7] This provision is applicable to D.C. Code offenders under 28 C.F.R. §2.89.

An ineffective assistance of counsel claim is tenable only where there is an underlying Sixth Amendment right to counsel. *See Wainwright v. Torna*, 455 U.S. 586, 587-88 (1988). In *Gagnon v. Scarpelli*, 411 U.S. 778, 790, the Supreme Court ruled that there is no general Sixth Amendment right to counsel in revocation proceedings.[8] *See also United States v. Soto-Olivas*, 44 F. 3d 788, 792 (9th Cir. 1995) (holding there is no constitutional right to counsel in proceedings to revoke supervised release; *United States v. Meeks*, 25 F.3d 1117, 1123 (2nd Cir. 1994) (same). Under this analysis, Harrington did not have a right to counsel at this revocation hearing, and consequently does not have a cognizable claim.

In any event, this claim fails to satisfy the two-prong test for ineffective assistance set forth in *Strickland v. Washington*, 466 U.S. 668, (1984). Under the *Strickland* standard Harrington must show that 1) his attorney's performance was deficient and 2) this deficient performance prejudiced his defense. *See Strickland,* 466 U.S. at 687. Prejudice is shown where there is a "reasonable probability" that but for counsel's performance, the outcome would have been different. *See id.* at 694. Absent prejudice, the Court need not address counsel's allegedly deficient performance. *See id.* at 697.

In regard to counsel's purported failure to investigate his employment, neither the decision of the Commission nor the National Appeals Board was predicated on Harrington's employment status. Moreover, even if Harrington was in fact employed, his pay stubs did not match the large amount of cash he possessed, his testimony was

---

[8] The instant case is not the rare instance contemplated in *Gagnon* that presents questions of fact or law of such complexity so as to warrant appointment of counsel as a matter of fundamental fairness. *See Gagnon,* 411 U.S. at 790.

discredited by the trier of facts, and other evidence and testimony substantiated the charge against him. Under these facts, Harrington fails to carry his burden to show prejudice, and there can be no finding of ineffective assistance.

Lastly, Harrington complains that Aisner failed to assist him in his appeal. As earlier noted, Aisner informed Harrington by letter that she was awaiting receipt of the hearing tape before filing the appeal and regretted that he "did not permit [her] to file [the] appeal and instead, filed [his] own without telling [her]." Harrington does not sustain his burden to show counsel's performance was deficient or prejudicial. Harrington's appeal was timely filed. Harrington's allegations that he did not have the "practical insight or experience" of counsel and that his appeal was "hastily prepared" are generally stated and conclusory. Harrington fails to provide any specific reasons why a counseled appeal would have proven successful. This claim fails to satisfy the standard set forth in *Strickland* and habeas corpus relief will be denied.

## Conclusion

For the reasons stated herein, the Court will deny the Petition. A separate Order consistent with this Memorandum Opinion follows.

September 28, 2007                     /s/
Date                                                RICHARD D. BENNETT
                                                    UNITED STATES DISTRICT JUDGE